# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COX MEDICAL CENTER** <br> 3801 South National Avenue <br> Springfield, MO 65807 <br><br> **COMMUNITY MEMORIAL HOSPITAL** <br> 147 North Brent Street <br> Ventura, CA 93003 <br><br> **DOCTORS MEDICAL CENTER** <br> 2000 Vale Road <br> San Pablo, CA 94806 <br><br> **BAPTIST ST. ANTHONY'S HOSPITAL** <br> 1600 Wallace Boulevard <br> Amarillo, TX 79106 <br><br> **UCH – MEMORIAL HOSPITAL CENTRAL** <br> 1400 East Boulder Street <br> Colorado Springs, CO 80909 <br><br> **MARIN GENERAL HOSPITAL** <br> 250 Bon Air Road <br> Greenbrae, CA 94904 <br><br> **ST. CLOUD HOSPITAL** <br> 1406 Sixth Avenue North <br> St. Cloud, MN 56303 <br><br> Plaintiffs, <br><br> v. <br><br> **ROBERT F. KENNEDY, JR.,** In his Official Capacity as Secretary, U.S. Dept. of Health & Human Services <br> 200 Independence Avenue, SW <br> Washington, D.C. 20201, <br><br> Defendant | **PLAINTIFF'S COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION UNDER THE MEDICARE ACT** <br><br> **PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Case No.: |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT**

**JURISDICTION AND VENUE**

1. This is a civil action brought to obtain judicial review of a final decision rendered by the Provider Reimbursement Review Board ("PRRB" or the "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"). The determination for which judicial review is hereby sought is PRRB Cases No. 25-1955G March 20, 2025.

2. This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

3. This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

4. Further, this Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. §1331, and 28 U.S.C. §1391(e) because:

    (a) Each Provider filed cost report (for FYE 1991 as required by 42 U.S.C. §1395oo(a);

    (b) Providers were dissatisfied with its fiscal intermediary's final determination, "…as to the amount of total program reimbursement due the provider… for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

    (c) The amount in controversy for each provider exceeds $10,000, as required by 42 U.S.C. §1395oo(a)(3);

    (d) Each Provider timely filed an appeal with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3);

2

  (e)  The Board effectively dismissed each Provider's appeal by notifying each Provider on March 20, 2025 that its appeal had been dismissed;

  (f)  This civil action is filed within sixty (60) days of the date that each Provider was notified by the PRRB, in writing that its appeal was dismissed as evidenced by its letter dated March 20, 2025. (**Exhibit A**).

5. Plaintiffs have exhausted all administrative remedies under federal law.

## PARTIES

6. Each Plaintiff herein (hereinafter, "Plaintiffs", "Providers" or "Plaintiff Providers") is an acute care, in-patient healthcare facility that serves a disproportionate share of low-income patients. At all relevant times, each Plaintiff Provider had a Medicare provider agreement with the Secretary of Health and Human Services and was eligible to participate in the Medicare program.

7. Defendant, ROBERT F. KENNEDY, JR., Secretary of the Department of Health and Human Services ("Secretary"), or his predecessors in office, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy is sued in his official capacity.

8. As set forth more fully below, Plaintiffs object to the dismissal of each of its appeals by the PRRB as arbitrary, capricious and a violation of the rightful and allowing claims of Plaintiffs.

9. Also as set forth more fully below, Plaintiffs object in particular to the Board's dismissal of the appeal of each Plaintiff as demonstrating a clear showing of its bad faith exercise of its discretion, which, under its own Board Rule 47.3, it may reinstate a case dismissal for failure to comply with its procedures upon the Provider's, "written motion demonstrating good cause…"

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

10. Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291, as amended by 42 U.S.C. §§1395 et. seq. ("the Medicare program"), establishes a program of medical benefits for persons aged

3

65 or older, and also for persons under age 65 who are disabled. The Centers for Medicare and Medicaid Services "CMS") formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

11. Medicare pays for hospital inpatient services through a prospective payment system (PPS) based on predetermined, nationally applicable rates. 42 U.S.C. § 1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on hospital-specific factors. See, 42 U.S.C. §1395ww(d). This case involves the hospital-specific disproportionate share ("DHS") adjustment, which requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "...significantly disproportionate number of low-income patients." 42 U.S.C. §1395ww(d)(5)(F)(i)(I).

12. Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "…disproportionate patient percentage ("DPP"). 42 U.S.C. §1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the Medicare Fraction and the Medicaid Fraction for a hospital's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Hospitals whose DSH percentages meet certain thresholds receive an adjustment which results in increased PPS payments for inpatient hospital services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

### The Medicare and Medicaid Fraction

13. The first fraction's numerator is the number of hospital patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income ("SSI") benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. *Id.* The first fraction is frequently referred to as the Medicare Fraction.

14. The second fraction's numerator is the number of hospital patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such

period but not entitled to benefits under Medicare Part A, and the denominator is the total number of hospital patient days for such period. *Id.* The second fraction is frequently referred to as the Medicaid fraction.

15. The SSI program is administered by the Social Security Administration "SSA"); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

16. CMS's payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries (FI). Fiscal intermediaries determine payment amounts due the Providers under Medicare law and regulations. 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b). Although the intermediary calculates the DPP, it is CMS that computes the SSI fraction.

17. The government reimburses a substantial percentage of Medicare bad debt incurred by providers. This rule reflects the Secretary's recognition that providers' inability to collect cost-sharing amounts from beneficiaries could otherwise result in part of the cost of Medicare-covered services being borne by individuals not covered by the Medicare program. *See,* 42 C.F.R. § 413.89(d); PRM § 304. The bad debt reimbursement rule is aimed at preventing such "cross-subsidization," which is prohibited by statute. *See,* 42 U.S.C. § 1395x(v)(1)(A).

18. At the close of a fiscal year, a provider of services must submit a cost report to its fiscal intermediary showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. §413.20 and § 413.24(f). The intermediary

reviews the provider's cost report makes adjustments as it deems necessary and issues a final notice of program reimbursement ("NPR") to the hospital. Id. §405.1803.

19. A hospital which is dissatisfied with the NPR may file an administrative appeal to the Provider Reimbursement Review Board ("PRRB") within 180 days after notice of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. § 405.1803.

20. Pursuant to 42 U.S.C. §1395oo(f)(1), hospitals may obtain judicial review of any final decision of the PRRB, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days from the date on which notice of any such final decision is received.

## FACTS SPECIFIC TO THIS MATTER

21. The PRRB received Plaintiffs' Group Appeal Request on February 5, 2025 (Case No. 25-1955G) appealing from a Notice of Program Reimbursement ("NPR") In the appeal, the issue subject to the appeal was described as: "Medicare Fraction (SSI) – Statutory & Systemic Errors".

22. Plaintiffs filed its Group Appeal through its duly appointed representative, Quality Reimbursement Services (QRS). Concurrent with the February 5 filing of the Group Appeal appropriately uploaded to the PRRB portal site, QRS filed the requisite "Appointment of Designated Representative Letter" but mistakenly failed to also upload the requisite "Issue Statement." Indeed, as somewhat vaguely referenced by the Board (**Exhibit A, p. 1**), the QRS member, in his haste, uploaded that same Representative Letter a second time, erroneously believing that he was uploading the mandatory Issue Statement.

23. Thereafter, on February 12, 2025, the PRRB issued an Acknowledgement and Critical Due Dates Notice in which it sets a briefing schedule for the Parties to file preliminary position papers, *and requested an Issue Statement,* adding that the Issue Statement as submitted was deemed insufficient in its content pursuant to the Board's rules. (**Exhibit A, p. 2**). The Board's finding was consistent

with the fact that QRS had mistakenly filed its Appointment of Designated Representative Letter in lieu of the Issue Statement Letter. The PRRB set a deadline for which Plaintiffs, through QRS were to file the Issue Statement of February 19, 2025, or <u>one week</u> after issuing its Acknowledgment Letter, *supra*.

24. Apparently, no one staffer at QRS is believed to have taken note of the February 12, 2025 Board letter nor therefore posted the February 19 deadline imposed by the Board to submit the Issue Statement. In fairness to the QRS staff and as noted in the accompanying document entitled, "Supplement to Request of Appeal and Acceptance of Additional Information Under Good Cause Extension" (**Exhibit C**), as well as paragraph 25, below, the overall and ongoing severe repercussions caused by the neighboring Easton fire and accompanying debris clean-up activities, the interruption to the normal operations of the QRS corporate offices was substantial and clearly continued for many weeks thereafter.

25. To be clear, On January 7, 2025, at least 10 wildfires started in Los Angeles County and surrounding areas, with the Palisades, Eaton, Hurst, and other fires igniting that day. These fires quickly spread and were exacerbated by drought conditions, low humidity, and strong winds. By January 21, 2025, California was battling four active wildfires, with a total of approximately 37,794 acres burned. The Palisades and Eaton fires, which began on January 7, were among the most destructive in California since records began in 1932, according to NOAA. The aforementioned Eaton fire located in Alta Dena, California (Los Angeles County) was one of the most devastating fires in Los Angeles County to start on January 7, causing the greatest loss of life of all the firestorms.

26. The corporate offices of Plaintiffs' duly appointed representative, QRS is located at 150 North Santa Anita Avenue in the city of Arcadia. Arcadia is one of several communities that border Alta Dena and the location of the Easton wildfire. As noted in the Declaration of Maria Munoz, attached to

**Exhibit C,** QRS's corporate office is just seven miles from the core of the Eaton fire, and close enough to be seen from the office windows at QRS. As also noted by Ms. Munoz, the president and owner of QRS, Mr. James Ravindran had a residence and home office located in Arcadia and was mandatorily evacuated from his residence on January 7. Indeed, he would be forced away from that residence for nearly three days. (**Declaration attached to Exhibit C**). The clear commotion that the Eaton fire created in the immediate fire zone vicinity, including the city of Arcadia, is amply described by Ms. Munoz. It can be well understood how this enormous fire and its after effects caused significant business disruption and operations at QRS continuing well after the January 7 disaster.

27. Moreover, that Supplemental Request for Reinstatement (**Exhibit** C) details the back up of work on many dozens of QRS files, many with PRRB deadlines fast approaching that had to be promptly addressed well into February (surely at the time of the February 12 letter), in spite of the continuing effects impacting daily business operations.

28. The Court is also directed to the initial "Request of Appeal and Acceptance of Additional Information Under Good Cause Extension" ((**Exhibit B**) sent to the Board one day prior to **Exhibit C,** *supra* which initially informed the Board that, "Due to the emergency conditions created by the fire disaster and its extensive impact on operations, manual operation recovery procedures caused several Board-issued deadlines to be missed, including the filing of appeal."

29. It should be indisputable that under the extraordinary circumstances created by the Eaton fire, Plaintiffs' failure to file their Issue Statement in a more timely fashion (or by the February 12 deadline imposed by the Board) atop the clerical error of mistakenly uploading the same Representation Letter a second time in lieu of the Issue Statement should well demonstrate and meet

or exceed the good cause requirement under the provisions of 42 C.F.R. §405.1836 and PRRB Rule 2.1.4.

30. A large fire, let alone one where weather and wind conditions spawned impacted much of Los Angeles County on January 7, 2025, in a surrounding area in close proximity to the QRS office and Mr. Ravindran's residence/home office can and did have widespread and devastating effects, while generally impacting public health, infrastructure, the environment, and the economy. The combined effect of approximately 10 wildfires in LA County on that day would most assuredly be felt for miles, even hundreds of miles away.

31. Finally, to further illustrate the enormity and severe impact felt by residents and business people throughout LA County on January 7 and for weeks and weeks thereafter, including those such as QRS in such close proximity to one of the largest fires that day, both the state of California's Franchise Tax Board and the Federal Internal Revenue Service issued *six month extensions* for residents to file their state and federal tax returns (otherwise due by April 15).

32. Noting that Plaintiffs, by and through their representative QRS filed their Request for Reinstatement of Appeal letter (**Exhibits B and C**) just days before the filing of the instant complaint, it may appear premature for Plaintiffs to initiate this complaint before the Board has fully reviewed and ruled on the Request. However, and in an abundance of caution regarding the uncertainty of deadlines, Plaintiffs wished to ensure that this complaint was in fact filed within 60 days after the issuance of the Board's final decision to dismiss Plaintiffs' appeal.

## COUNT I

33. Plaintiff hereby incorporates by reference paragraphs 1 through 32 of the Complaint as though fully set forth herein.

34. The provisions of 42 C.F.R. § 405.1853 unambiguously give the Board discretion to extend deadlines for the submission of papers, including a provider's Issue Statement. And, indeed the Board did so, by granting a mere *seven-day* extension to Plaintiffs. Of course, if Board members were even remotely aware of the possible impact of the LA wild fires on QRS and its offices in Arcadia (southern California), they might assume that its deadline letter sent on February 12, less than a month after the eruption of the fires, might, given the highly unusual circumstances, get away from the attention of QRS staffers.

35. Yet even should it be the case that not a single Board member recognized that QRS's corporate location was in close proximity to the Eaton fire, the Board's own Rule 47.3, providing that administrative oversights can be set aside upon the provider's demonstration of "good cause", the circumstances herein should surely qualify as an understandable "oversight".

36. The Board's decision to dismiss Plaintiffs' appeal, was arbitrary and capricious in violation of 5 U.S.C. §706(2) by failing, in good faith, to adhere to its own promulgated Rules and failing to exercise its sound discretion by not inquiring further of Plaintiffs for a showing of good cause why the Board should not dismiss the appeal. Indeed, in this very instance. The Board and its staff could clearly see that QRS erroneously filed two identical Representation Letters, instead of the one Issue Statement. With the combination of all the aforementioned factors, is the dismissal of an appeal involving seven hospitals and hundreds of thousands of additional dollars in Medicare DSH reimbursement the *appropriate remedy and/or exercise of sound discretion?*

37. Finally, the applicable provisions of the Administrative Procedures Act provides that the "reviewing court shall... hold unlawful and set aside agency action… found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (c) in excess of

statutory jurisdiction, authority, or limitation, or short of statutory right; (d) without observance of procedure required by law; or (e) unsupported by substantial evidence. 5 U.S.C. §706(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Providers pray for an Order:

(a) Reversing and setting aside the PRRB decision to dismiss Plaintiffs' appeal;

(b) Remanding each appeal back to the Board for full adjudication on the merits;

(c) Awarding the costs of suit incurred by Plaintiffs;

(d) Awarding Plaintiffs interest as required by 42 U.S.C. § 1395oo(f)(2); and,

(e) For such other and further relief as the Court may deem just and proper under the circumstances.

DATED: May 20, 2025                    Respectfully submitted,

/s/Alan J. Sedley
Alan J. Sedley, Esq.  Bar# OH0017
ALAN J. SEDLEY LAW CORP.
18880 Douglas, Suite 417
Irvine, CA  92612
(818) 601-0098
asedley@sedleyhealthlaw.com

Counsel for Plaintiffs